Louis GNIOTEK, Carmen Christy, Joseph Gioffre, Augustine Pescatore, Leonard Garris, Eugene Sullivan, David Sofronski, Robert Schwartz, Robert Stansfield, and Fraternal Order of Police, Plaintiffs,

v.

CITY OF PHILADELPHIA, W. Wilson Goode, Leo Brooks, Gregore J. Sambor, Andreas Hantwerker, John Straub, Esq., and Barbara Mather, Solicitor, Defendants.

Civ. A. No. 84–5242.

United States District Court,
E.D. Pennsylvania.

March 7, 1986.

Robert B. Mozenter, Anthony J. Molloy, Jr., Michael S. Durst, Philadelphia, Pa., for plaintiffs.

John R. Padova, Philadelphia, Pa., for Augustine Pescatore.

Adam Thurschwell, Philadelphia, Pa., for Am. Civ. Liberties Union.

Jesse Milan, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This is an action brought by nine former Philadelphia Police Officers and the Fraternal Order of Police ("Plaintiffs") stemming from the officers' dismissals from the Philadelphia Police Department in the latter part of 1984. Plaintiffs claim that the civil and constitutional rights of the officers have been violated by the named defendants. The named defendants are: The City of Philadelphia, Mayor Wilson Goode, former Managing Director Leo Brooks, former Police Commissioner Gregore Sambor, Inspector Andreas Hantwerker, Assistant City Solicitor John Straub, and Solicitor Barbara Mather (hereinafter "Defendants"). Plaintiffs seek punitive and compensatory damages as well as declaratory and injunctive relief.

In 1984, the United States instituted criminal proceedings against fifteen former Philadelphia Police officers alleging various acts of police corruption. *United States v. Martin, et al.*, Cr. No. 84–106. Some defendants were severed. The first trial was held in July 1984 and the second trial was held in November 1984 under the caption *United States v. Volkmar.* During the course of these proceedings, several witnesses for the government identified the nine plaintiff police officers in this action as recipients of bribes. The plaintiff police officers were soon thereafter dismissed from the Police Department.

The defendants have filed a motion to dismiss or in the alternative for summary judgment. Plaintiffs have responded with a cross-motion for summary judgment. In addition, the American Civil Liberties Foundation ("ACLF") has filed an amicus curiae brief on the issue of the constitutionality of the suspension and dismissal procedures employed by the Philadelphia Police Department. Defendants have filed a response to plaintiffs' motion and to the ACLF's brief.

The Court will dispose of the pending motions in the following manner: The defendants' motion to dismiss the Fraternal Order of Police ("FOP") from the action on the ground that the FOP lacks standing will be denied. The defendants' motion to dismiss plaintiffs' claim pursuant to 42 U.S.C. § 1985 for failure to state a claim will be granted. The defendants' motion to dismiss plaintiffs' claim in connection with the deprivation of their pensions will be granted. Summary judgment will be entered in favor of the defendants in connection with plaintiffs' claims that the suspension and dismissal procedures used by defendants violated the police officers' procedural due process; that plaintiff police officers' fifth amendment rights were violated by the dismissal procedures; and that they were not dismissed for "just cause."

The material facts concerning which there are no genuine issues may be summarized as follows: Prior to the events set out below, plaintiffs, except the FOP, were police officers employed by the Philadelphia Police Department. Plaintiffs Gniotek, Christy, Pescatore and Garris were named by prosecution witnesses in *United States v. Martin, et al.,* as having been the recipients of bribes for the protection of illegal activities. Specifically, government witness Eugene Boris testified that he made payments to "[a]n officer Gutak [sic] * * * He came ... the first of the month, and I paid him." Boris further testified that he paid in increments of $60.00 over a period of time to Officer Gniotek. On the same day, Albert Ricci, the so called "bagman" of the Vice Squad for the Northwest Police Division testified that "Augustine Pescatore, Leonard Garris and myself" shared in bribe proceeds. Ricci also testified that money was distributed to other members of the Northwest Vice Squad, which consisted of Pescatore, Garris and Christy.

Plaintiff Gioffre was similarly identified in the *Martin* trial as a recipient of bribes in return for permitting illegal activities. Former Police Captain Joseph Alvaro, who was in charge of the Vice Squad in the Northwest Police Division, testifying for the government stated that during the period November 1982 and March 1983, Gioffre collected payments from liquor licensed establishments in return for permitting illegal activities.

On November 1, 1984, former police officer George Bowie, during the course of his entry of a guilty plea, identified plaintiff Sullivan as the recipient of bribe monies.

In the trial of *United States v. Volkmar* in November 1984, George Bowie, a prosecution witness, identified plaintiffs Schwartz and Stansfield as recipients of bribes. He testified: "I had Bob Schwartz picking up from several people, and then Bob Stansfield also." Government witness Robert Sadowl also testified that he met with plaintiff Sofronski "and discussed my business throughout the city," and that they made an agreement regarding Sa-dowl's video poker machines. Sadowl testified "It was $10 per location per month."

On the day after the implicating testimony was made, each of the plaintiff police officers, except Sullivan, was ordered to report to the Ethics Accountability Division of the Police Department. Each officer appeared and was called in individually with his counsel present. Each officer was advised that he had been identified in federal court testimony as the recipient of bribes in connection with the performance of his duties as a police officer and that each was the subject of a Philadelphia Police Department criminal investigation. Each officer was then given his *Miranda* warnings and was asked if he wished to give a statement. A copy of the warnings is attached as Appendix A. Each officer, on advice of his counsel, asserted his fifth amendment privilege against self-incrimination and chose to remain silent. Each officer was then given a memorandum entitled "Notice of Suspension with Intent to Dismiss," which stated that the suspension was effective immediately. A copy of a "Notice of Suspension with Intent to Dismiss" is attached as Appendix B. Plaintiff Sullivan was served at home with the "Notice of Suspension with Intent to Dismiss" but did not receive Miranda warnings. He was, however, notified of the reasons for his suspension with intent to dismiss.

After his suspension, each plaintiff, except Sullivan and Stansfield, received a copy of a "Statement of Charges filed and Action Taken" ("Statement"). A copy of a "Statement of Charges Filed and Action Taken" is attached as Appendix C. The Statement lists the violations of the Police Disciplinary Code with which each individual plaintiff police officer was charged. Plaintiffs Gniotek, Christy, Pescatore, Gioffre, Schwartz and Sofronski signed the Statement and checked the box on the Statement marked "I Plead Not Guilty & Request a Hearing". Plaintiff Garris refused to sign the Statement.

In addition, each plaintiff police officer was served with a "Notice of Intention to Dismiss" which formally suspended each

plaintiff as of the date of the initial interview with the Ethics Accountability Division. A copy of a "Notice of Intention to Dismiss" is attached as Appendix D. This notice sets forth the reasons for the suspension and specifies:

If you believe that this intended action is unjustified, you may, under regulations of the Civil Service Commission, within ten days from the service of this notice, notify me in writing of your reasons therefor and summarize the facts in support of your belief. A copy of your letter to me must be sent at the same time to the Personnel Director.

The notice was signed by then Police Commissioner Sambor. Sullivan was also notified of his right to submit a letter within ten days to Police Commissioner Sambor. Neither the Police Commissioner nor the Personnel Director ever received a letter from any of the plaintiffs within the ten day period.

Each plaintiff police officer was dismissed "[e]ffective ten days from service of [the Notice of Intention to Dismiss]."

Each of the plaintiff police officers initiated individual grievances with the Police Commissioner for the purpose of challenging his dismissal. Pursuant to the FOP collective bargaining agreement with the City, the plaintiffs submitted their grievances to arbitration by an arbitrator designated by the American Arbitration Association. Plaintiffs' grievances were consolidated and were heard by one arbitrator. The arbitrator issued an opinion on November 25, 1985, in which he found that Christy, Pescatore and Garris had been dismissed for just cause. These three officers have not been indicted. The arbitrator determined that Gniotek and Sofronski were *not* dismissed for just cause because the City had not met its burden of proof. These two officers have not been indicted. The arbitrator ordered Gniotek and Sofronski reinstated if witnesses against them were not produced within two weeks of the date of his opinion. The grievances of Gioffre, Sullivan, Schwartz and Stansfield were "tabled pending final outcome, including possible appeals, of the proceedings in federal court." Arb. opin. at 2, Nov. 25, 1985. Gioffre, Sullivan and Schwartz were indicted and were found guilty. Stansfield has not been indicted.

Subsequent to their termination, the plaintiff police officers were advised by Anthony Witlin, the Executive Director of the Philadelphia Board of Pensions and Retirement (the "Board"), that they may be disqualified from receiving pension benefits pursuant to § 217 of the Philadelphia Municipal Employees Retirement Ordinance. The Board is currently conducting hearings on the plaintiffs' rights to their pension benefits.

Defendants have listed the following eight grounds in support of their motion to dismiss or in the alternative for summary judgment:

1) Plaintiffs were lawfully dismissed for just cause under the Philadelphia Home Rule Charter;

2) Plaintiffs' discharge did not violate the Constitution because they were not dismissed for invoking their Fifth Amendment rights;

3) Plaintiffs' dismissals complied with the due process requirements for public employees;

4) Plaintiffs' complaint alleges no class-based discrimination for which relief can be granted under 42 U.S.C. § 1985;

5) This Court should abstain from making any ruling on the propriety of plaintiffs' discharge under the Home Rule Charter;

6) Plaintiff Fraternal Order of Police lacks standing;

7) Plaintiffs' claims regarding their rights to a pension are premature; and

8) This Court should abstain from making any decision regarding plaintiffs' entitlement to a pension under section 217 of the Municipal Employees Retirement Ordinance.

The plaintiffs, on the other hand, have moved for summary judgment and denial

of the defendants' motion on the following four grounds:

1) Plaintiffs' discharges were not supported by just cause as a matter of law;

2) The failure/refusal of the City of Philadelphia to ask plaintiffs relevant questions relating to the proper performance of their duties and to discuss a proffer of immunity, but immediately terminating plaintiffs upon asserting their fifth amendment rights constituted discharge in violation of their assertion of that privilege;

3) The City's procedures and regulations governing procedural due process provide no predeprivation notice of charges or opportunity to be heard and, thus, are unconstitutional; and

4) The opinion of the City Solicitor, a determination that plaintiffs were not eligible for the receipt of a pension, constitutes a deprivation that must be preceded by notice and opportunity to be heard.

## STANDING OF FRATERNAL ORDER OF POLICE

The defendants have moved for dismissal of the FOP on the ground that it lacks standing in this matter. The law is clear that representational standing can exist where the association alleges that its members have or will suffer immediate or threatened injury as a result of the challenged action; that the members could bring the same suit individually; and that the nature of the claim and the relief requested do not require the individual participation of the injured parties for a proper resolution. *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211–12, 45 L.Ed.2d 343 (1975). *See also Hunt v. Washington State Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Philadelphia Lodge No. 5 v. City of Philadelphia*, 599 F.Supp. 254, 257 (E.D.Pa. 1984). There is no question that the FOP represents all uniformed employees of the Philadelphia Police Department. Plaintiffs' complaint challenges departmental practices which pertain to dismissal of uniformed employees, and seeks declaratory and injunctive relief. Since the allegations raised by the FOP fulfill each of the three

requirements outlined by the Supreme Court, the FOP has standing in this case. Defendants' motion to dismiss the FOP on the ground that it lacks standing will be denied.

## FAILURE TO STATE A CAUSE OF ACTION UNDER § 1985

The defendants seek dismissal of plaintiffs' claim brought pursuant to 42 U.S.C. § 1985. Because plaintiffs do not allege any facts or circumstances to support a claim under § 1985, defendants' motion to dismiss will be granted. In order to state a cause of action under 42 U.S.C. § 1985, plaintiffs must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckinridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (footnote omitted); *Carchman v. Korman Corp.*, 594 F.2d 354 (3d Cir.), *cert. denied* 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979). Plaintiffs' allegations do not meet this requirement. Therefore the plaintiffs' 42 U.S.C. § 1985 claim will be dismissed.

## DEPRIVATION OF PENSIONS WITHOUT DUE PROCESS

The plaintiffs have submitted to the Philadelphia Board of Pensions and Retirement (the "Board") the issue of whether plaintiffs are barred from receiving their pensions. The Court has not been advised as to whether the Board has made a determination. Plaintiffs have, however, asked this Court to determine that the plaintiff police officers have been deprived of their pensions without due process of law. The plaintiffs' claim of deprivation of property without due process of law is therefore not ripe for determination because apparently the Board is currently reviewing whether plaintiffs will be barred from receiving their pensions. As stated by Judge Giles in *Amanto v. Witlin*, 544 F.Supp. 140, 142 (E.D.Pa.1981)

There must at least be some definitive administrative determination resulting in

a denial or deprivation of due process before [plaintiff] can raise such a [§ 1983] claim. Until there is a final decision which has a practical impact on a litigant, it is not ripe for adjudication. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *United States ex rel. Ricketts v. Lightcap*, 567 F.2d 1226 (3d Cir.1977) (dictum) (usual ripeness standard applies in section 1983 cases). The basic rationale underlying the ripeness standard as articulated by the Supreme Court is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott*, 387 U.S. at 148–49, 87 S.Ct. at 1515.

544 F.Supp. at 142. Plaintiffs' claim for relief in connection with the alleged unconstitutional deprivation of their pensions will therefore be dismissed on the ground that this claim is not ripe for adjudication.

## SUMMARY JUDGMENT: DISMISSAL FOR ASSERTING FIFTH AMENDMENT

■ Plaintiffs claim that the plaintiff police officers were dismissed because they asserted their fifth amendment privilege against self-incrimination. In support of their contention, it is asserted that the Police Department was required to ask the plaintiff police officers questions concerning the performance of their duties and to offer them immunity by assuring them that their answers would not be used against them. Plaintiffs' assert that *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) requires such a procedure. The Court disagrees. *Gardner* holds only that the Constitution prohibits a policeman from being terminated solely on the basis of his refusal to waive his fifth amendment privilege against self-incrimination. The Supreme Court in *Gardner* stated:

The question presented in the present case is whether a policeman who refuses to waive the protections which the [fifth amendment] privilege gives him may be dismissed from office because of that refusal.

392 U.S. at 276, 88 S.Ct. at 1915. The Supreme Court answered the above question by stating "the mandate of the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment." *Id.* at 279, 88 S.Ct. at 1916.

While plaintiffs' attempt to characterize the dismissals as reprisals for the plaintiff police officers asserting their fifth amendment privilege, there is nothing in this record indicating that the plaintiff police officers were dismissed because they asserted their fifth amendment privilege. Seven of the nine plaintiff police officers have stated in depositions that they do not believe that they were dismissed for asserting their fifth amendment privilege. See Depositions of Gniotek, Christy, Garris, Sofronski, Schwartz, Stansfield and Gioffre. Def.Ex.B. Police Commissioner Sambor stated in his deposition that the officers were dismissed because of the testimony regarding their misconduct made during the *Martin* and *Volkmar* criminal trials. Def.Ex.E. The material facts concerning which there are no genuine issues demonstrate that the plaintiff police officers were dismissed on the basis of their alleged involvement in bribery schemes. Defendants are, therefore, entitled to summary judgment in connection with this fifth amendment claim.

## SUMMARY JUDGMENT: PROCEDURAL DUE PROCESS

The basic issue presented by the cross-motions for summary judgment is whether the procedural due process rights of the police officers were violated by the procedures employed by the defendants in effectuating the suspensions and dismissals of the plaintiff police officers. All parties rely on the due process procedural require-

ments recently enunciated by the United States Supreme Court in *Cleveland Board of Education v. Loudermill,* — U.S. —, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The plaintiffs claim that they were not afforded the due process required by *Loudermill,* whereas the defendants claim that they were.

*Loudermill* involved two plaintiffs, James Loudermill and Richard Donnelly, who had been employed, respectively, by the Cleveland Board of Education and the Parma Board of Education. Each plaintiff had been terminated from employment without the chance to respond to the employer's charges against him. Each employee's case had been dismissed by the district court for failure to state a claim. The Supreme Court ruled that the district court erred because plaintiffs were not given the opportunity prior to their dismissals to explain their side of the story. The Court held that due process requires that a public employee with a property right in continued employment be given the opportunity to respond prior to his or her dismissal, in addition to administrative procedures providing for a post-termination hearing. 105 S.Ct. at 1496.

As the Supreme Court points out in *Loudermill,* a public employee's entitlement to an opportunity to respond to the charges made against him depends upon the existence of a constitutionally protected property interest in his employment. *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972). Property interests are created by state law. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In this case, the Court is required to look to the law of Pennsylvania to determine whether the plaintiff police officers had a constitutionally protected property interest in their employment. The Court and parties agree that under the law of Pennsylvania the plaintiff police officers do have a sufficient property interest in their employment to require the application of the due process procedures set forth in *Loudermill.*

The issue which this Court must decide is whether the procedures afforded the plaintiff police officers by the defendants under the circumstances hereinbefore discussed pass muster under *Loudermill.* As pointed out by the Supreme Court "the root requirement" of due process is that a person be given notice and opportunity to be heard prior to deprivation of a significant property interest. *Loudermill, supra* at 1493 citing inter alia *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950) and *Boddie v. Connecticut,* 401 U.S. 371, 374, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). The Court stated in *Loudermill*

The need for some form of pretermination hearing, ... is evident from a balancing of the competing interests at stake. These are the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

105 S.Ct. at 1494. The Supreme Court delineated the constitutionally required pretermination due process procedures as follows: "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 105 S.Ct. at 1495 (citations omitted). The Supreme Court reasoned:

Here, the pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

105 S.Ct. at 1495 (citation omitted). The Court in *Loudermill* also recognizes that in addition to the pretermination requirements, a public employee who may be discharged only for cause has a constitutional right to a post-termination hearing. As

stated by the Court: "We conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures ..." 105 S.Ct. at 1496.

This Court has determined that the material facts concerning which there are no genuine issues support defendants' position that the pretermination due process requirements articulated in *Loudermill* have been satisfied by the procedures employed by the defendants in this case.

### 1. Notice and Explanation of the Charges

As heretofore pointed out, on the day after the implicating testimony was given in the federal court, each of the plaintiff police officers, except Sullivan, was ordered to report to the Ethics Accountability Division. Each officer appeared with his counsel, was individually interviewed and was advised that he had been identified in federal court testimony as the recipient of bribes in connection with the performance of his duties as a police officer. Each officer was also advised that he was the subject of a Philadelphia Police Department criminal investigation. Each officer after suspension, received a copy of a "Statement of Charges Filed and Action Taken" ("Statement"). *See* Appendix C. The Statement lists the violations of the Police Disciplinary Code with which each individual police officer was charged. In addition, each police officer received after suspension, a "Notice of Intention to Dismiss", *see* Appendix D, which stated therein the reason for the intention to dismiss.

### 2. Opportunity to Respond

Prior to dismissal, the plaintiff police officers had an opportunity to respond to the allegations made against him. At the Ethics Accountability interview, each officer was given his *Miranda* warnings with his counsel present and was asked if he wished to give a statement. *See* Appendix A. Each officer, on advice of his counsel, asserted his fifth amendment privilege and chose to remain silent. Additionally, the "Notice of Intention to Dismiss", *see* Appendix D, a copy of which each plaintiff police officer received, specified:

If you believe that this intended action is unjustified, you may, under regulations of the Civil Service Commission, within ten days from the service of this notice, notify me in writing of your reasons therefor and summarize the facts in support of your belief. A copy of your letter to me must be sent at the same time to the Personnel Director.

The record, therefore, reveals that each plaintiff police officer received oral and written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story prior to dismissal from the Police Department.

### 3. Post-Termination Hearing

Plaintiff police officers are afforded post-termination remedies which clearly exceed the minimum requirements approved by the Supreme Court in *Loudermill*. 105 S.Ct. at 1496. They are given the option to appeal to the Civil Service Commission or to pursue their grievances through arbitration as provided in the police officers' collective bargaining agreement with the City.

The Civil Service Regulations specify that within 30 days of dismissal, the plaintiffs have the right to appeal. Phila.Civ. Serv.Regs. § 17.06. The Regulations allow for a full hearing at which time both sides have the right to be heard and to present evidence. The Commission has the power to reinstate a former employee and to award backpay. 351 Pa.Admin.Code § 7.7–201 (Shepard's 1983). Furthermore, as was the case in *Loudermill*, once plaintiffs have appealed pursuant to the Civil Service Regulations, the result is reviewable in the state court. Pennsylvania law provides for appeal of the Civil Service Commission decision to the Court of Common Pleas. 53 Pa.Cons.Stat.Ann. § 752 (Purdon 1981).

As heretofore pointed out, plaintiffs have pursued their grievances through arbitration, which is the option provided to the police officers under their collective bargaining agreement with the City. The col-

lective bargaining agreement provides for a full post-termination evidentiary hearing before an arbitrator. *See* 43 Pa.Stat.Ann. § 217.1 (Purdon Supp.1985). The arbitrators' decision is appealable to the Court of Common Pleas. 42 Pa.Cons.Stat.Ann. § 933(b) (Purdon 1981).

## SUMMARY JUDGMENT: JUST CAUSE

■ Finally, there are cross-motions for summary judgment in connection with the plaintiffs' claim that the plaintiff police officers were dismissed without "just cause." Plaintiffs contend that the defendants based their decisions to terminate the officers on uncorroborated hearsay. The contention that the dismissals were without "just cause" does not rise to the level of a constitutional claim. Section 1983 actions are not vehicles for reviewing the evidentiary basis employed by a state or municipality in terminating the employment of a state or municipal employee. Section 1983 causes of action are limited to those situations where some constitutional right of the plaintiff has been violated.

As heretofore pointed out, the issue as to whether there was "just cause" for dismissing the plaintiff police officers may be appealed to the Civil Service Commission or, at the option of the police officers, submitted to arbitration. The plaintiff police officers have already submitted the issue of "just cause" to arbitration pursuant to the collective bargaining agreement between the police officers and the City of Philadelphia, and the police officers have the right to appeal the decision of the arbitrator to the Court of Common Pleas and thereafter through the state appellate process. The options which are provided to the police officers for determining whether they were dismissed without "just cause" clearly do not provide a basis for a constitutional violation. In this case, as in *Cohen v. City of Philadelphia*, 736 F.2d 81 (3d Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984), the State of Pennsylvania and the City of Philadelphia have provided the police officers with ample procedures to determine whether the police officers were dismissed without "just cause." As stated by the court in *Cohen:*

We thus join the First and Seventh Circuits in holding that substantive mistakes by administrative bodies ... do not create a federal claim so long as correction is available by the state's judiciary.... In this case, because Pennsylvania has provided a means of correcting the errors that will sometimes occur at the administrative level, no deprivation without due process of law has occurred.

736 F.2d at 86 (citations and footnote omitted). The Court concludes, for all of the above reasons, that the defendants are also entitled to summary judgment on the plaintiffs' claim that the police officers were dismissed without "just cause."

In addition, as contended by the defendants, the "just cause" issue may well be an issue from which this Court should abstain pursuant to the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny. The Court is well aware, as pointed out by our Third Circuit in *Johnson v. Kelly*, 583 F.2d 1242 (3d Cir.1978), " 'The doctrine of abstention, ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.' " *Johnson*, 583 F.2d at 1249–50 quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Applying the analysis of *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) made by the Third Circuit in *Johnson v. Kelly*, one can readily conclude that a) state action was pending against the plaintiffs in this case when they filed their complaint; b) the state action was in effect an action taken by a subdivision of the state, the City of Philadelphia; c) the state action in dismissing the plaintiff police officers was intended to vindicate an important policy of the city for the protection of its residents; and d) the city had the option of vindicating that policy through criminal prosecutions. *Johnson*, 583 F.2d at 1248. The concept of federalism does not appear to tolerate a United States District Court making the

evidentiary determination as to whether police officers, whether employed by the state or municipality, have committed acts which require their dismissal.

## APPENDIX A·

STATEMENT OF: P/O Louis Gniotek #1488, 5th District

DATE AND TIME: July 20, 1984; 1200 hours

PLACE: Staff Inspectors' Headquarters, 323 Race Street

CONCERNING: ACCEPTANCE OF BRIBES WHILE ASSIGNED TO THE 5TH POLICE DISTRICT

IN PRESENCE OF:
Inspector Andreas Hantwerker
Deputy City Solicitor John Straub
Captain Joseph Stine #101, C.O. 5th District
FOP Attorney Anthony Molloy

INTERROGATED BY: Inspector Andreas Hantwerker

RECORDED BY: Kathleen Rodriguez, Clerk Steno III, directly on the typewriter.

I am Inspector Andreas Hantwerker, this is Deputy City Solicitor John Straub and your C.O., Captain Joseph Stine.

We are questioning you concerning testimony presented in Federal Court under oath by Eugene Boris an admitted number writer, that he paid to you $60 per month for an extended period beginning in 1982 for protection of his illegal activities.

We have a duty to explain to you and to warn you that you have the following legal rights:

A. You have a right to remain silent and do not have to say anything at all.

B. Anything you say can and will be used against you in Court.

C. You have a right to talk to a lawyer of your own choice before we ask you any questions, and also to have a lawyer here with you while we ask questions.

D. If you cannot afford to hire a lawyer, and you want one, we will see that you have a lawyer provided to you, free of charge, before we ask you any questions.

E. If you are willing to give us a statement, you have a right to stop any time you wish.

1. Q. Do you understand that you have a right to keep quiet, and do not have to say anything at all?

   A. Yes.

2. Q. Do you understand that anything you say can and will be used against you?

   A. Yes.

3. Q. Do you want to remain silent?

   A. Yes, on the advice of counsel.

4. **Q.** Do you understand that you have a right to talk with a lawyer before we ask you any questions?

   **A.**

5. **Q.** Do you understand that if you cannot afford to hire a lawyer, and you want one, we will not ask you any questions until a lawyer is appointed for you free of charge.

   **A.**

6. **Q.** Do you want to talk with a lawyer at this time, or to have a lawyer with you while we ask you questions?

   **A.**

7. **Q.** Are you willing to answer questions of your own free will, without force or fear, and without any threats or promises having been made to you?

   **A.**

Statement of: _____  Date _____

APPENDIX  B

# MEMORANDUM

CITY OF PHILADELPHIA

: P/O Louis Gniotek #1488, 5th District

DATE    7/20/84

FROM  : Inspector Andreas Hantwerker

SUBJECT: <u>NOTICE OF SUSPENSION WITH INTENT TO DISMISS</u>

You are hereby notified, by order of the Police Commissioner, that effective immediately you are suspended for a period of thirty (30) days with Intent to Dismiss.

_____
NAME

7/20/84
_____
DATE

_____
WITNESS (COMMAND OFFICER)

7-20-84
_____
DATE

_____
SIGNATURE (POLICE OFFICER)

APPENDIX C

| STATEMENT OF CHARGES FILED AND ACTION TAKEN | CITY OF PHILADELPHIA POLICE DEPARTMENT | MISCONDUCT REPORT NO. 84-146 |
|---|---|---|
| | | DATE 7-20-84 |

**TO: POLICE COMMISSIONER**

| FILED AGAINST Police Officer Louis Gniotek | PLATOON & GROUP ASSIGNMENT 3    A | DISTRICT OR UNIT 5th District |
|---|---|---|
| DATE OF APPOINTMENT 3-10-72 | PAYROLL NUMBER 137109 | DATES OF VACATION, MIL. LEAVE, ETC. Suspended |

**CHARGES** (Witnesses to be listed in final paragraph of Charges)

ARTICLE I — CONDUCT UNBECOMING AN OFFICER

Section 1.01 — Accepting bribes or gratitudes for permitting illegal acts.

Specification #1 — "In that while assigned to the 5th Police District, you did accept from Eugene Boris, an admitted number writer, monetary payments on a monthly basis for an extended period beginning in 1982 for protection of his illegal activities."

Section 1.05 — Failure to report, in writing, offers of bribes or gratuities to permit illegal acts.

Specification #1 — "In that while assigned to the 5th Police District, you did accept from Eugene Boris, an admitted number writer, monetary payments on a monthly basis for an extended period beginning in 1982 for protection of his illegal activities."

Section 1.20 — Knowingly conversing or associating with known gamblers while on or off duty.

Specification #1 — "In that while assigned to the 5th Police District, you did accept from Eugene Boris, an admitted number writer, monetary payments on a monthly basis for an extended period beginning in 1982 for protection of his illegal activities."

| PREFERRED BY (Signature) Captain Joseph J. Stine #101 | APPROVED DISTRICT COMMANDER (Signature) Captain Joseph J. Stine #101 |
|---|---|
| APPROVED DIVISION COMMANDER (Signature) _[signature]_ 7/23/84 | RECEIVED BY (Signature of Accused) _[signature]_ 7-20-94 (Date) |
| ☐ I Plead Guilty and Waive a Hearing (Sig. & Date) | ☒ I Plead Not Guilty & Request a Hearing (Sig. & Date) _[signature]_ 7-20-84 |

**ACTION RECOMMENDED**

☒ BOARD OF INQUIRY    ☐ REPRIMAND    ☐ OTHER: _Dismissed_

_[signature]_ (Chief Inspector)    _[signature]_ 7-27-84 (Deputy Commissioner)

**ACTION TAKEN**

☐ BOARD OF INQUIRY    ☐ REPRIMAND    ☐ DISMISS CHARGES

☒ OTHER: _dismissed_    _[signature]_ (Commissioner)

| STATEMENT OF CHARGES FILED AND ACTION TAKEN | CITY OF PHILADELPHIA POLICE DEPARTMENT | MISCONDUCT REPORT NO. |
| --- | --- | --- |
| | | DATE 7-20-84 |

TO: POLICE COMMISSIONER

| FILED AGAINST | PLATOON & GROUP ASSIGNMENT | DISTRICT OR UNIT |
| --- | --- | --- |
| Police Officer Louis Gniotek | 3          A | 5th District |
| DATE OF APPOINTMENT 8-10-72 | PAYROLL NUMBER 137109 | DATES OF VACATION, MIL. LEAVE, ETC. Suspended |

CHARGES (Witnesses to be listed in final paragraph of Charges)

ARTICLE I — CONDUCT UNBECOMING AN OFFICER

Section 1.25 — Knowingly associates, fraternizes, or conducts business transaction at any time, or in any manner whatsoever, with known criminals or persons engaged in unlawful activities.

Specification #1 — "In that while assigned to the 5th Police District, you did accept from Eugene Boris, an admitted number writer, monetary payments on a monthly basis for an extended period beginning in 1982 for protection of his illegal activities."

Section 1.75 — Repeated violations of departmental rules and regulations, and/or any other course of conduct indicating that a member has little or no regard for his responsibility as a member of the Police Department.

Specification #1 — "In that while assigned to the 5th Police District, you did accept from Eugene Boris, an admitted number writer, monetary payments on a monthly basis for an extended period beginning in 1982 for protection of his illegal activities."

| PREFERRED BY (Signature) Captain Joseph C. Stine #101 | APPROVED DISTRICT COMMANDER (Signature) Captain Joseph C. Stine #101 |
| --- | --- |
| APPROVED DIVISION COMMANDER (Signature) 7/23/84 | RECEIVED BY (Signature of Accused) (Date) 7-20-84 |
| ☐ I Plead Guilty and Waive a Hearing (Sig. & Date) | ☒ I Plead Not Guilty & Request a Hearing (Sig. & Date) 7-20-84 |

ACTION RECOMMENDED

| ☒ BOARD OF INQUIRY | ☐ REPRIMAND | ☐ OTHER: |
| --- | --- | --- |
| (Chief Inspector) | | (Deputy Commissioner) |

ACTION TAKEN

| ☐ BOARD OF INQUIRY | ☐ REPRIMAND | ☐ DISMISS CHARGES |
| --- | --- | --- |
| ☒ OTHER: Dismissed | | (Commissioner) |

| STATEMENT OF CHARGES FILED AND ACTION TAKEN | CITY OF PHILADELPHIA POLICE DEPARTMENT | MISCONDUCT REPORT NO. |
|---|---|---|
| | | DATE 7-20-84 |

TO: POLICE COMMISSIONER

| FILED AGAINST | PLATOON & GROUP ASSIGNMENT | | DISTRICT OR UNIT |
|---|---|---|---|
| Police Officer Louis Griotek | 3 | A | 5th District |
| DATE OF APPOINTMENT | PAYROLL NUMBER | | DATES OF VACATION, MIL. LEAVE, ETC. |
| 8-10-72 | 137109 | | Suspended |

CHARGES                                    *(Witnesses to be listed in final paragraph of Charges)*

ARTICLE IV                 NEGLECT OF DUTY

Section 4.01          Failure to take police action, on or off duty,
                      in or out of uniform, and/or failure to make
                      the required written report.

Specification #1      "In that while assigned to the 5th Police District,
                      you did accept from Eugene Boris, an admitted
                      number writer, monetary payments on a monthly basis
                      for an extended period beginning in 1982 for
                      protection of his illegal activities."

Section 4.20          Failure to comply with any Commissioner's Orders,
                      Directives, Regulations, etc. or any oral or
                      written orders of superiors.

Specification #1      "In that while assigned to the 5th Police District,
                      you did accept from Eugene Boris, an admitted
                      number writer, monetary payments on a monthly basis
                      for an extended period beginning in 1982 for
                      protection of his illegal activities."

| PREFERRED BY (Signature) Captain Joseph J. Stine #101 | APPROVED DISTRICT COMMANDER (Signature) Captain Joseph J. Stine #101 |
|---|---|
| APPROVED DIVISION COMMANDER (Signature) 7/23/14 | RECEIVED BY (Signature of Accused) 7-20-84 |
| ☐ I Plead Guilty and Waive a Hearing (Sig. & Date) | ☑ I Plead Not Guilty & Request a Hearing (Sig. & Date) 7-20-84 |

ACTION RECOMMENDED

| ☐ BOARD OF INQUIRY | ☐ REPRIMAND | ☐ OTHER: |
|---|---|---|
| *(Chief Inspector)* | | *(Deputy Commissioner)* |

ACTION TAKEN

| ☐ BOARD OF INQUIRY | ☐ REPRIMAND | ☐ DISMISS CHARGES |
|---|---|---|
| ☑ OTHER: Dismissal | | *(Commissioner)* |

| STATEMENT OF CHARGES FILED AND ACTION TAKEN | CITY OF PHILADELPHIA POLICE DEPARTMENT | MISCONDUCT REPORT NO. |
|---|---|---|
| | | DATE 7-20-84 |

**TO: POLICE COMMISSIONER**

| FILED AGAINST Police Officer Louis Gniotek | PLATOON & GROUP ASSIGNMENT 3    A | DISTRICT OR UNIT 5th District |
|---|---|---|
| DATE OF APPOINTMENT 8-10-72 | PAYROLL NUMBER 137109 | DATES OF VACATION, MIL. LEAVE, ETC. Suspended |

CHARGES          *(Witnesses to be listed in final paragraph of Charges)*

ARTICLE V        DISOBEDIENCE OF ORDERS

Section 5.01      Soliciting money or any valuable thing without proper authorization.

Specification #1     "In that while assigned to the 5th Police District you did accept from Eugene Boris, an admitted number writer, monetary payments on a monthly basis for an extended period beginning in 1982 for protection of his illegal activities."

| PREFERRED BY (Signature) Captain Joseph E. Stine 101 | APPROVED DISTRICT COMMANDER (Signature) Captain Joseph E. Stine 101 |
|---|---|
| APPROVED DIVISION COMMANDER (Signature) 7/23/84 | RECEIVED BY (Signature of Accused) 7-20-84 |
| ☐ I Plead Guilty and Waive a Hearing (Sig. & Date) | ☑ I Plead Not Guilty & Request a Hearing (Sig. & Date) 7-20-84 |

**ACTION RECOMMENDED**

| ☐ BOARD OF INQUIRY | ☐ REPRIMAND | ☐ OTHER: |
|---|---|---|
| (Chief Inspector) | | (Deputy Commissioner) |

**ACTION TAKEN**

| ☐ BOARD OF INQUIRY | ☐ REPRIMAND | ☐ DISMISS CHARGES |
|---|---|---|
| ☑ OTHER: Dismissal | | (Commissioner) |

## APPENDIX D

| NOTICE OF INTENTION TO DISMISS *(Prepare in TRIPLICATE)* | CITY OF   Philadelphia |
|---|---|

| | NOTICE SERVED |
|---|---|
| Louis W. Gniotek 3308 Fordham Road Phila., PA 19114 | UPON (Employee specified) PR#137109 P/O Louis W. Gniotek #1488 |
| | ☒ BY MAIL    ☒ PERSONALLY |
| | DATE SERVED 7-24-84 |

Louis W. Gniotek

DEPARTMENT, DIVISION, ETC.

Police - 5th District

TITLE OF POSITION

Police Officer

Effective ten days from service of this notice, it is our intention to dismiss you from your position with the City of Philadelphia as referred to above. My reasons for intending to take such actions are:

"While assigned to the 5th Police District you did accept $60.00 per month from Eugene Boris, an admitted numbers writer, for an extended period of time beginning in 1982 in return for your not enforcing vice laws against Mr. Boris' illegal number writing activities."

"As a result of the above-mentioned conduct, you are charged with the following violations of the Police Department policies:

1.01  Accepting Bribes
1.05  Failure to Report Bribes
                              —CONTINUED—

If you believe that this intended action is unjustified, you may, under regulations of the Civil Service Commission, within ten days from the service of this notice, notify me in writing of your reasons therefor and summarize the facts in support of your belief. A copy of your letter to me must be sent at the same time to the Personnel Director.

Your replying to this notice and sending a copy of your reply to the Personnel Director does not constitute an appeal to the Civil Service Commission. You may appeal to the Civil Service Commission only when this intended action becomes final and within thirty days thereafter.

POLICE COMMISSIONER

ORIGINAL – Employee          cc: Department          cc: Personnel Director

LOUIS V. GNIOTEK #1488, PR#13/109

1.20  Knowingly Conversing or Associating with Known Criminals
1.25  Knowingly Fraternizing With Criminals
1.75  Conduct Unbecoming an Officer—Showing Little or No Regard For Responsibilities
4.01  Failure to Take Police Action
4.20  Failure to Comply With Orders, Directives and Regulations
5.01  Soliciting Money

The above course of conduct indicates you have little or no regard for your responsibilities as a Police Officer with the Philadelphia Police Department.

"You are hereby officially notified that for the same reasons you are suspended without pay from your position effective at the beginning of your tour of duty on JULY 20, 1984, for thirty days, or until your prior dismissal."