808 F.2d 241
 GNIOTEK, Louis; Christy, Carmen; Gioffre, Joseph;
Pescatore, Augustine; Garris, Leonard; Fraternal Order of
Police, Sullivan, Eugene; Sofronski, David; Schwartz,
Robert; Stansfield, Robert, Appellants,
v.
CITY OF PHILADELPHIA, Goode, Wilson W., Mayor; City of
Philadelphia, Brooks, Leo; Managing Director, City of
Philadelphia, Sambor, Gregore J.; Police Commissioner, City
of Philadelphia, Hantwerker, Andreas; Inspector Ethics and
Accountability Division, Philadelphia Police Department,
Straub, John Esq.; Assistant City Solicitor, Police
Counsel, Co-Commander Ethics and Accountability Division,
Philadelphia Police Department, Mather, Barbara; Solicitor,
City of Philadelphia.
 No. 86-1175.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 17, 1986.
Decided Dec. 24, 1986.
 
 Anthony J. Molloy, Jr. (argued), Robert B. Mozenter, Mozenter, Molloy & Durst, Philadelphia, Pa., for appellants.
 Jesse Milan, Jr. (argued), Chief Asst. City Sol., Ralph J. Teti, Divisional Deputy City Sol., Philadelphia, Pa., for appellees.
 Adam Thurschwell, Kairys & Rudovsky, Philadelphia, Pa., for amicus curiae American Civil Liberties Foundation on behalf of appellants.
 Before SEITZ, GIBBONS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 This case arises out of events surrounding the 1984 Philadelphia Police corruption trials. In those two trials, United States v. Martin and United States v. Volkmar, government witnesses identified appellants, who were then officers in the Philadelphia Police Department, as recipients of unlawful bribes. The two trials were monitored by investigators for the Philadelphia Police Ethics Accountability Division ("EAD"). When the witnesses identified the officers, the EAD investigators immediately reported the witnesses' testimony to the Police Commissioner and to the commanding officer of the EAD, Inspector Andreas Hantwerker.[1] Thereupon, the Commissioner instructed Inspector Hantwerker to interview each officer.
 
 
 2
 The next day Inspector Hantwerker executed a "Notice of Suspension with Intent to Dismiss" for each officer. He then summoned the officers to appear at EAD headquarters. Each officer appeared with counsel, and each was called in individually to the Inspector's office. Hantwerker advised each officer that he had been identified in federal court testimony as the recipient of bribes and that he was the subject of a criminal investigation. Each was given his Miranda warnings and was asked if he wished to make a statement. On advice of counsel each chose to remain silent.[2] Thereupon, Hantwerker gave each his "Notice of Suspension with Intent to Dismiss" effective immediately, with suspension to be without pay and to last for 30 days or until dismissal.
 
 
 3
 Four days later the officers were served "Notices of Intention to Dismiss" which specified the charges against each officer and which stated that if the recipient thought that dismissal was unjustified he had, under the regulations of the Civil Service Commission, ten days to submit to the Commissioner his reasons in support of his belief that dismissal was unjustified. None of the officers exercised his right to make a submission within ten days. Each was officially dismissed when the ten day period expired.
 
 
 4
 All six appellants lodged grievances with the Police Commissioner challenging the dismissals. The grievances were submitted to arbitration. The arbitrator ruled that three of the officers were dismissed with just cause and that two were not. One case is still pending.
 
 
 5
 In April, 1985, the Fraternal Order of Police, the individual appellants herein, and three other officers who do not participate in this appeal filed suit in United States District Court for the Eastern District of Pennsylvania against the City of Philadelphia and various city officials (hereinafter collectively referred to as "the city"). They alleged, inter alia, that the manner in which they were dismissed from the police force constituted violations of their rights to due process and equal protection, and violated the fifth amendment's prohibition of compelled self-incrimination. The district court granted defendants' motion for summary judgment on all claims. Gniotek v. City of Philadelphia, 630 F.Supp. 827 (E.D.Pa.1986). On appeal, only the due process and self-incrimination claims are pressed. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 (1982).
 
 DISCUSSION
 
 6
 The only due process issue in this case is whether appellants received adequate predeprivation hearings. All parties agree that appellants have a cognizable property interest in their jobs and that the City of Philadelphia provides adequate post-deprivation remedies.[3]
 
 
 7
 In Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court held that when threatened with dismissal, a public employee with a property interest in his job is entitled to "a pretermination opportunity to respond, coupled with post-termination administrative (or judicial) procedures." Id., 105 S.Ct. at 1496. The predeprivation hearing need not be elaborate, but it is necessary, even if extensive post-deprivation remedies are afforded.[4] Id. at 1495. Prior to deprivation "[t]he tenured public employee is entitled to notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id.
 
 
 8
 The district court held that appellants received adequate predeprivation hearings. However, the district court deemed that the deprivation occurred when appellants were officially dismissed, not when they were suspended without pay. Gniotek, 630 F.Supp. at 834. Thus, the court held that the 10 day opportunity to respond in writing which the appellants were given (and which the Civil Service regulations require) constituted adequate predeprivation hearings. Appellants urge, however, that the suspensions with intent to dismiss were de facto dismissals and the deprivation, therefore, occurred when they were suspended, i.e., before they were given 10 days to respond.[5] The appellants' argument has merit. The Fifth Circuit addressed a similar argument in Thurston v. Dekle, 531 F.2d 1264 (5th Cir.1976), vacated on other grounds, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978). Thurston involved a tenured public employee who was suspended for thirty days without pay, and the suspension automatically became a termination if the employee failed to successfully appeal the suspension within the 30 days. The Fifth Circuit held that the suspension was the functional equivalent of permanent discharge subject to a condition subsequent; therefore, the employee threatened with "suspension" was entitled to the same predeprivation process required when an employee is threatened with discharge. At least one district court in this circuit has accepted the reasoning of Thurston. See Hopkins v. Mayor & Council of Wilmington, 600 F.Supp. 542 (D.Del.1984) (due process violation when policeman is suspended without pay after being arrested for drug possession). The Thurston rule prevents the government employer from circumventing the pretermination hearing requirement, and we adopt it here. Accordingly, we hold that before appellants were suspended with intent to dismiss they were entitled to whatever pretermination procedures the Constitution mandates prior to actual dismissal.
 
 
 9
 Our inquiry, therefore, is narrowed to the question whether the interviews that the individual appellants had with Inspector Hantwerker were sufficient, under Loudermill, to discharge the city's duty to provide pretermination hearings. The adequacy of any hearing must be evaluated in reference to the "two essential requirements of due process, ... notice and an opportunity to respond." Loudermill, 105 S.Ct. at 1495. We will examine separately these two essential requirements.
 
 A. Notice
 
 10
 Notice is sufficient, 1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the particular circumstances of the case. See id.; and see Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). We believe that the notices served to appellants satisfied both of these requirements.
 
 
 11
 We first examine the content of the notices. During the interviews with Inspector Hantwerker, each appellant was given a form containing a summary of the evidence against him and containing a recitation of the Miranda rights. Each appellant, before being suspended, signed the form applicable to him. Appellant Gniotek's form, for instance, stated:
 
 
 12
 I am Inspector Andreas Hantwerker, this is Deputy City Solicitor John Straub and your C.O., Captain Joseph Stine.
 
 
 13
 We are questioning you concerning testimony presented in Federal Court under oath by Eugene Boris an admitted number writer, that he paid you $60 per month for an extended period beginning in 1982 for protection of his illegal activities.
 
 
 14
 This statement, clearly, gave Gniotek notice of the charges and nature of evidence against him. It was of such specificity to allow Gniotek the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges. We find that under the standards enunciated in Loudermill, this notice satisfied the demands of due process. We have also examined the notices given to the other appellants. Though different in detail from the notice given to Gniotek, they are similar in degree of specificity. Accordingly, we hold that they are not constitutionally defective.
 
 
 15
 Having found that the notices are not lacking in content, we now must determine if they were timely served. Here, appellants received notice at the hearing itself; no advance notice was given. Lack of advance notice, however, does not constitute a per se violation of due process. See, e.g., Goss, 419 U.S. at 582, 95 S.Ct. at 740 (In the case of a student's suspension from school, "[t]here need be no delay between the time 'notice' is given and the time of hearing."). Indeed, the First Circuit recently indicated that in the employee termination context, notice served at the predeprivation hearing satisfies the demands of due process. Brasslett v. Cota, 761 F.2d 827, 836 (1st Cir.1985).
 
 
 16
 We agree with the First Circuit that advance notice is not required. "[T]he timing and content of notice ... will depend on appropriate accommodation of the competing interests involved." Goss, 419 U.S. at 579, 95 S.Ct. at 738. In Loudermill, the Supreme Court attempted to accommodate the government's interest in quickly removing an unsatisfactory employee with the employee's interest in retaining employment. The balance was struck by allowing the government to dismiss the employee after only a compressed hearing and by guaranteeing to the employee "an opportunity to present his side of the story" followed by a prompt and complete post-termination hearing. In the circumstances of this case, advance notice was not necessary to enable the employee to present his story and would have burdened the government's interest in quickly suspending an unsatisfactory employee. The balance has been struck by the Supreme Court in Loudermill, and imposing an advance notice requirement would, we feel, tip the scales in this case. We therefore conclude that the appellants received proper notice.
 
 B. Opportunity to Respond
 
 17
 Appellants and amicus curiae, the American Civil Liberties Foundation, urge that because appellants were the subjects of a criminal investigation and because their responses in the pretermination hearings could have been used against them in a criminal action, they were not given a meaningful opportunity to respond as required by due process. They further urge that the city unconstitutionally burdened their privilege against self-incrimination because they were compelled to choose between asserting the privilege and responding.[6]
 
 
 18
 These contentions are meritless. The fact that appellants had to choose whether to talk or to remain silent offends neither the fifth nor the fourteenth amendment. The Supreme Court's decisions in Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) and United States v. Rylander, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) lead us to this conclusion.[7] In Williams, the Court observed that the decision whether to respond to the state's evidence is often a difficult one, but the fact that a choice must be made does not raise fifth or fourteenth amendment problems:
 
 
 19
 The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. When he presents his witnesses, he must reveal their identity and submit them to cross-examination which in itself may prove incriminating or which may furnish the State with leads to incriminating rebuttal. That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination. The pressures generated by the State's evidence may be severe but they do not vitiate the defendant's choice to present an alibi defense and witnesses to prove it, even though the attempted defense ends in catastrophe for the defendant. However "testimonial" or "incriminating" the alibi defense proves to be, it cannot be considered "compelled" within the meaning of the Fifth and Fourteenth Amendments.
 
 
 20
 Williams, 399 U.S. at 83-84, 90 S.Ct. at 1896-1897. Relying on Williams, the Court in Rylander held that no constitutional violation occurs when a defendant in a civil contempt proceeding is confronted with the option of offering evidence to discharge his burden of proof or of asserting his fifth amendment privilege. By remaining silent, the defendant in Rylander was precluded from discharging his burden of proof and therefore was subject to imprisonment for civil contempt. If there is no constitutional defect when one must choose between possible loss of freedom and self-incrimination, a fortiori, there is no defect when one must opt between speaking at an employment termination hearing and asserting the fifth amendment privilege.
 
 
 21
 In sum, appellants received all the process due them and were accorded their rights under the fifth amendment. The judgment appealed from will therefore be affirmed.
 
 
 
 [1]
 Appellants Gniotek, Christy, Garris and Pescatore were identified on July 19, 1984. Appellants Stansfield and Sofronski were identified on November 14, 1984. The scenarios as to each appellant were identical, however
 
 
 [2]
 One appellant requested his "Charter Rights" which, in essence, is a request for use immunity. The request was denied
 
 
 [3]
 Appellants assert, however, that inadequacies in their predeprivation hearings "tainted their post-deprivation due process rights." Appellants' Brief at 33. Because we will hold that the predeprivation hearings were adequate, we need not address this contention. The adequacy of the post-deprivation hearings is otherwise unchallenged
 
 
 [4]
 Thus, Loudermill supersedes our decision in Cohen v. City of Philadelphia, 736 F.2d 81 (3d Cir.), cert. denied, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). See Stana v. School Dist. of City of Pittsburgh, 775 F.2d 122, 130 (3d Cir.1985); Brown v. Trench, 787 F.2d 167, 171 (3d Cir.1986)
 
 
 [5]
 It should be noted further that under Pennsylvania law, suspensions, like dismissals are only proper when for just cause; therefore, appellants had a separate property interest in not being suspended
 
 
 [6]
 Appellants and amicus would have us hold that appellants were entitled to use immunity. Because we hold that appellants' rights under the fifth and fourteenth amendments were not violated, we, of course, do not find that they were entitled to use immunity at the pretermination hearings. We note, however, that an Illinois federal district court recently held that a defendant in a non-criminal proceeding is not entitled to immunity merely because he is faced with a "Fifth Amendment Dilemma." United States v. One 1985 Plymouth, 644 F.Supp. 1546, (N.D.Ill.1986). We agree with that holding
 
 
 [7]
 Appellants contend that the line of cases holding that a tenured government employee cannot be dismissed solely because he asserts his fifth amendment rights is controlling here. See Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). In these cases, however, the employees were dismissed not because of any evidence of bribery or other wrong-doing, but solely because they chose to assert the privilege against self-incrimination. In the present case, appellants were confronted with evidence constituting grounds for dismissal; it was then up to each appellant to rebut this evidence. Instead, each appellant stood silent. They were privileged to do so, "but the claim of privilege is not a substitute for relevant evidence." Rylander, 460 U.S. at 761, 103 S.Ct. at 1554. Appellants were therefore dismissed on the basis of the city's evidence of bribery. It is the existence of this evidence and the city's use thereof that distinguishes the present case from Lefkowitz, Gardner, and Garrity