**Gerald CONLIN, Appellant,**

v.

**CITY OF ST. PAUL, et al., Respondents.**

**No. C3-87-1747.**

Court of Appeals of Minnesota.

Feb. 2, 1988.

Review Denied March 30, 1988.

Theodore J. Collins, Collins, Buckley, Sauntry & Haugh, St. Paul, for appellant.

Edward P. Starr, City Atty., Terry Sullivan, Asst. City Atty., St. Paul, for respondents.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and KALITOWSKI, JJ.

## OPINION

RANDALL, Judge.

On May 22, 1986, appellant received a letter terminating his employment with the City of Saint Paul. After conducting an administrative hearing, the civil service commission affirmed the discharge. Appellant brought a motion in district court to reverse the termination and to be reinstated in his former position. The trial court sustained the commission's decision. We affirm.

## FACTS

Appellant worked for the City of Saint Paul for fifteen years. In March 1986, it was discovered that Frank Flug, also a city employee, had been selling stolen tires to other co-workers for approximately four years. Flug informed the police that appellant was one of the employees who had purchased a large number of stolen tires from him. A search warrant was obtained on appellant's home, and 34 tires were seized from his garage.

On April 30, 1986, appellant was charged with receiving stolen property, and pleaded guilty to a felony. The trial court imposed

a stay of imposition of sentence, which would have the effect of reducing appellant's crime from a felony to a misdemeanor after successful completion of probation. Appellant was placed on probation until September 1991, and ordered to do community service work. No jail time, fine, or restitution was ordered.

The Board of Water Commissioners conducted its own investigation into the illegal activities. Fourteen employees found to have purchased the stolen tires were told to contact the police within three weeks to avoid criminal or civil prosecution. The investigation disclosed that over a three year period, appellant had acquired at least 50 tires from Flug.

On May 22, 1986, appellant received a letter from the water commission terminating his employment:

Please be advised that you are hereby terminated from your position as Driver–Operator with the City of Saint Paul. The termination is effective as of May 30, 1986. Please be further advised that pursuant to the collective bargaining agreement between your unit and the City of Saint Paul, this discharge will be preceded by a five-day suspension without pay which will be effective as of May 23, 1986. During this time, you are entitled to meet with me to discuss this matter if you so desire. At the conclusion of the meeting, I may affirm, modify or withdraw this discharge.

This discharge is based upon the following facts:

For the past two or three years you have been involved in the receiving, storage and selling of stolen tires and other goods from S & M Tire Company. On or about April 28, 1986, you were arrested * * *. At that time there were thirty-four stolen tires in your garage and you

indicated that you had an additional eight semi-tires worth approximately $1,600 at another location. * * * Despite your knowledge that the tires and other materials were stolen property, you failed to report it to the police or other proper authority and, indeed, you continued to receive, store and sell such property.

Appellant did not use the time allotted to him during his suspension to meet with a member of the commission. A full administrative hearing was held, and appellant's discharge was affirmed on a two to one vote. The commission found appellant in violation of Civil Service Rule 16.B,[1] which is conviction of a criminal offense or a misdemeanor involving immoral conduct, and conduct unbecoming a city employee.

Appellant subsequently obtained a writ of certiorari from the district court to review the commission's decision. Appellant brought a motion to reverse the order and be reinstated. In the alternative, he asked that the matter be remanded to the Saint Paul Civil Service Commission for a rehearing. The trial court affirmed the termination.

## ISSUES

1. Was appellant's right to pretermination due process adequately protected?

2. Was the commission's decision to terminate appellant's employment supported by substantial evidence on the record as a whole?

## ANALYSIS

### I.

*Pretermination due process rights*

▮ As a public employee, appellant has a property right in continued employ-

---

1. The commission findings were:
   1. That Gerald Conlin pleaded guilty.
   2. That Thomas Mogren, Water Utility General Manager, terminated Gerald Conlin in accordance with Civil Service Rules.
   3. That Gerald Conlin's arrest under television cameras was to his disadvantage.
   4. That Gerald Conlin violated Civil Service Rule 16.B "CAUSE FOR DISCHARGE, REDUCTION OR SUSPENSION, Subsection 1.

Conviction for a criminal offense or for a misdemeanor involving immoral conduct; and 16.B, Subsection 5. Conduct unbecoming a City employee."
   5. That Gerald Conlin cooperated with the police.
   6. That although Gerald Conlin was a collector there was insufficient evidence that all the tires and cars went together.

ment with the city and cannot be deprived of that right without due process of law. *See* Minn.Stat. § 44.08 (1986) (no permanent employee in the classified service shall be dismissed except for just cause). The essential requirements of pretermination due process (a relatively new concept in public employment law) are notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). An employee must be given the opportunity to present reasons, either in person or in writing, why the proposed action should not be taken. *Id.*

Appellant contends the commission's letter, dated May 22, 1986, failed to provide him a meaningful opportunity to respond to the charges against him before he was suspended. Appellant claims this lack of opportunity makes his discharge unconstitutional. Appellant claims the letter discharged him immediately, subject only to reinstatement by the commission. Appellant argues the effect of the letter was to place him in a position of having to reverse a decision that was already made, rather than giving him an opportunity to convince his employer not to discharge him.

Respondent argues the letter was a notice of intent to terminate effective May 30, 1986. Respondent argues that since the letter gave appellant, prior to the effective date, an opportunity to discuss his side with the general manager, it complied with the basic due process requirement under *Loudermill.* Respondent claims the procedure outlined in the letter satisfies the requirement of an opportunity to respond before the discharge became effective.

■ Respondent argues that its letter complied with the thrust of *Loudermill,* which stated that the only meaningful time to invoke the discretion of the decisionmaker is before the termination takes effect. *Id.* 105 S.Ct. at 1494. Appellant contends that the only reasonable inference

from the May 22nd letter is that he would have a limited opportunity to respond to an "already made" decision to terminate him. We agree that the May 22nd letter communicated clear dissatisfaction with appellant's involvement in a matter involving stolen tires, and evidenced a firm intent to discharge. However, the letter also stated, with equal clarity, that appellant would be given several days to present his side of the matter, with the possibility that the pending discharge would be modified or completely withdrawn.

However subjective the possibilities of getting the decision to terminate either modified or withdrawn, we find that this informal pretermination process is all that *Loudermill* mandates. The reasoning of *Loudermill* is clear. Since Loudermill, like appellant here, was entitled to a full blown post-termination evidentiary hearing,[2] the pretermination procedure does not have to "definitively resolve the propriety of the discharge." *Loudermill,* at 1495.

■ The formality and procedural requisites for a "pretermination hearing" vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). The pretermination procedure serves to determine whether there are reasonable grounds to believe the charges are true and whether they support the proposed action. *Loudermill,* 105 S.Ct. at 1495. To require more than notice and an opportunity to respond, would "intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* at 1495–96.

Appellant received a full post-termination hearing before a neutral body. We conclude, taking into consideration this full post-termination administrative hearing, that appellant was provided the due pro-

**2.** Certain classes of employees, such as public employees, veterans, people with "tenured" positions, et cetera, have long been entitled to administrative hearings on the question of whether they can lose their jobs. These post-termination rights are not affected by *Loudermill,* and, in fact, the holding in *Loudermill* is premised on the knowledge that post-termination rights are available. Pretermination due process rights are always *an addition,* and never in derogation, to employees' rights.

cess called for in a valid pretermination hearing. The May 22, 1986, letter, although inartfully worded, offered appellant an opportunity to respond to the charges before his termination took effect.

■ In the future, we suggest that when a pretermination notice is required, the notice should discuss proposed action against an employee as prospective only, and not imply that the charges have been reviewed and found proven, that a firm conclusion has been reached, but "our minds might change." We suggest the notice include a fixed date on which the employee, at his own discretion, could meet with his supervisor on the matter.[3]

## II.

*Scope of review*

■ Reversal or remand of an administrative decision is justified if the agency's action is unsupported by substantial evidence on the record as a whole. *Gibson v. Civil Service Board*, 285 Minn. 123, 127, 171 N.W.2d 712, 715 (1969). Even if contrary inferences appear to be better supported, or the court is inclined to reach a different result, a limited scope of review applies. *McCarthy v. Civil Service Commission of Minneapolis*, 277 Minn. 358, 361, 152 N.W.2d 462, 464 (1967).

Appellant argues that the commission's decision was arbitrary and unreasonable, and not supported by substantial evidence on the record as a whole. Appellant testified that he did not "really know for sure" the tires were stolen and that all the tires he purchased were intended for the fourteen vehicles owned by him and his family. Appellant contends there is not enough evidence in the record to support his discharge. After a careful review of the record, we affirm the commission and the trial court.

■ Much of the testimony at the hearing was conflicting. Resolving such conflicts rests with the commission as part of the factfinding process. *Id.* at 361, 152 N.W.2d at 464. We hold there was substantial evidence in the record as a whole to support the trial court's findings. The arresting officer testified that appellant told him he had known for a month the tires were stolen. Appellant himself testified he had purchased over 42 tires in three years, and had never placed any of them on any of his own vehicles. This can support a reasonable inference that appellant knew the tires were stolen or "hot," but, because of advantageous prices, chose to stockpile them.

Appellant did plead guilty to the felony of receiving stolen property. Even though his sentence (stay of imposition) will have the effect of reducing his record to show a misdemeanor, if he successfully completes probation, appellant pled guilty to a felony offense, and will have a felony record until the completion of probation. The record indicates that appellant's plea to the offense was intelligently made, and with a full understanding of his right to deny the offense and stand trial. Taking into account the discretion accorded a commission acting in these matters, a careful examination of the record discloses no reason to disturb its decision.

## DECISION

Appellant's pretermination due process rights were adequately protected by the commission's letter. The agency's decision to discharge appellant was supported by substantial evidence on the record as a whole.

Affirmed.

---

3. It must always be kept in mind that these pretermination hearings can be informal, do not come equipped with all the standard procedural safeguards of a true adversarial hearing, and are *not* meant to fully resolve the propriety or legality of the forthcoming discipline. The full panoply of rights and procedural safeguards are accorded the employee at the post-termination hearing and at that hearing's review process. The pretermination hearing is a relatively new concept designed to give employees of certain protective categories the right to attempt to head off disciplinary proceedings before they are instituted.