**Bruce CASADA, Plaintiff,**

v.

**BOONEVILLE SCHOOL DISTRICT NO. 65; Donal Elmore, Pat Curry, Jack Baggett, Bill Daniel, Tom Dupree, Ron Smith, and Glenn Fitzgerald, Individually and as Members of the Board of Directors of Booneville School District No. 65; C.R. Underwood, Defendants.**

**Civ. No. 87–2146.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

June 22, 1988.

Marcia Barnes, Little Rock, Ark., for plaintiff.

James A. Arnold, II, Fort Smith, Ark., for defendants.

Robert W. Bishop, Fort Smith, Ark., for Booneville School Dist.

## MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD, District Judge.

This is an action for wrongful termination of a teacher's employment contract. The plaintiff has moved for partial summary judgment on his claim that due process was violated in his termination and his claim that the termination was contrary to the Arkansas Teacher Fair Dismissal Act (ATFDA). Defendants have filed a cross-motion for partial summary judgment on plaintiff's due process claims and for summary judgment on the ground that the plaintiff's claims are barred *res judicata.* Plaintiff's motion for partial summary judgment on his due process claims will be granted, his motion on ATFDA grounds will be denied, defendants' cross-motion for partial summary judgment will be denied, and defendants' motion for summary judgment on the basis of *res judicata* will be denied.

### I.

It is conceded that on May 29, 1987, certain of the defendants met with plaintiff to inform him that they would recommend termination of his contract. At the same time, they gave him a letter indicating that the reason for the recommendation was "sexual advancements, by you, towards students...." On June 3, 1987, plaintiff wrote to Mr. C.R. Underwood, Superintendent of the relevant school district, asking for what was essentially a bill of particulars: The "names of the persons making the allegations, a specific description of what these allegations entail, and the dates the alleged incidents are supposed to have occurred." On June 9, the school district's lawyer responded to this letter but refused to supply the information. On June 16, plaintiff's lawyer wrote a letter to the relevant school board's president requesting a hearing before the school board, reiterating plaintiff's demand for particulars and, in addition, asking for "copies of any and all documents upon which the district administration relied in making the recommendation of nonrenewal and/or all documents that will be introduced at the hearing in support of the Superintendent's recommendation of nonrenewal." The school board refused this request as well.

On June 25, 1987, the school board held a hearing as plaintiff had requested. At that hearing, witnesses testified to acts of a sexual character that plaintiff had committed with respect to some of his female students. Plaintiff was not allowed to cross-examine the witnesses but was allowed to present witnesses of his own, which he did. He also testified himself. His attorney, who examined the witnesses presented on behalf of the plaintiff, was allowed to give an opening and closing statement. At the end of the hearing, the board voted unanimously to terminate plaintiff's contract.

Plaintiff maintains that this rather elaborate procedure, which produced a record of 123 pages, did not comport with the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. It appears conceded that plaintiff had a continuing expectation of employment with the school district, and thus had a property right of which he could not be deprived without due process. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The question therefore becomes what process is due under these circumstances. Defendants contend that we are not without recent guidance on this point from the Supreme Court. In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), on which defendants ask this court to rely, the court indicated that where there is a prompt postdepriva-

**732**

tion remedy available to plaintiff, which will afford him a full post-termination hearing, the predeprivation " 'hearing,' though necessary, need not be elaborate." *Id.* at 545, 105 S.Ct. at 1495. "In general," the Court went on to say, " 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action," citing *Mathews v. Eldridge,* 424 U.S. 319, 343, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976). The hearing should simply be "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill,* 470 U.S. at 545–46, 105 S.Ct. at 1495. "The essential requirements of due process" in these kinds of cases, the Court said, "are notice and an opportunity to respond." *Id.* at 546, 105 S.Ct. at 1495. Thus, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.*

Here, it is abundantly plain that plaintiff was afforded a hearing that comports with the requirements of *Loudermill.* He was notified of the hearing, not only had the evidence against him explained to him but had it presented in his presence, and presented his own side of the story. It is true that he did not have the particulars presented to him before the hearing, but *Loudermill* does not require that. *See Gniotek v. City of Philadelphia,* 808 F.2d 241 (3d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987). If *Loudermill* applies, then it seems clear that defendant would be entitled to prevail.

This does not, however, end the matter, for the result in *Loudermill* depended on the availability there of post-termination hearings before a Civil Service Commission that would review the matter *de novo.* It is true that under ATFDA plaintiff has the right to appeal "to the circuit court of the county in which the school district is located"; and the Act further provides that "[a]dditional testimony and evidence may be introduced on appeal to show facts and circumstances showing that the termi-

nation or renewal was lawful or unlawful." Ark.Code Ann. § 6–17–1510(d). It is not altogether clear to the court what "lawful or unlawful" means as a standard of review. It may mean that the circuit court may reverse only if the board's decision was arbitrary or capricious. *See Kirtley v. Dardanelle Public Schools,* 288 Ark. 86, 702 S.W.2d 25 (1986). But whatever it means, it seems reasonably certain that the hearing in the circuit court will not be a *de novo* review on the merits of the school board's decision with respect to plaintiff's termination. That, this court believes, is a necessary predicate to an application of the principles announced in *Loudermill.*

That being so, this case must be decided by resorting to principles to be found elsewhere. In *Brouillette v. Board of Directors of Merged Area IX,* 519 F.2d 126, 128 (8th Cir.1975), the court held that a public employee is entitled "to the minimal requirements of fair play" before being terminated, and that those requirements are:

(1) [C]lear and actual notice of the reasons for termination in sufficient detail to enable him or her to present evidence relating to them;

(2) [N]otice of both the names of those who have made allegations against the teacher and the specific nature and factual basis for the charges;

(3) [A] reasonable time and opportunity to present testimony in his or her own defense; and

(4) [A] hearing before an impartial board or tribunal.

It is plain on this record that the plaintiff was denied element number two in this list and probably element number one as well. In addition, the Eighth Circuit has held in a public employee discharge case that "[i]t is fundamental to a full and fair review required by the due process clause that a litigant have an opportunity to be confronted with all adverse evidence and to have the right to cross-examine available witnesses." *Nevels v. Hanlon,* 656 F.2d 372, 376 (8th Cir.1981). In our case, although plaintiff was confronted with the witnesses

against him he was denied the right to cross-examination.

The court is of the view that it is to the *Brouillette* and *Nevels* cases that it must look in order to decide plaintiff's motion for partial summary judgment with respect to his due process claims. That being so, it must be plain that plaintiff must prevail for the reasons adumbrated above. Defendants' cross-motion with respect to plaintiff's due process claims will therefore be denied.

## II.

Plaintiff has also moved for partial summary judgment based on defendants' alleged failure to abide by the provisions of ATFDA, Ark.Code Ann. §§ 6–17–1501 *et seqq.* In particular, plaintiff complains that he was not informed that past complaints had been made about him as required by Ark.Code Ann. § 6–17–1504(c). That provision states that if a school administrator "believes or has reason to believe the problems could lead to termination or nonrenewal of contract," he or she must bring them to the attention of the relevant teacher in writing and must also document whether efforts are brought to bear "to assist the teacher to correct" the deficiencies. In *Leola School District v. McMahan,* 289 Ark. 496, 712 S.W.2d 903 (1986), the court held that like violations of the Act supported the trial court's conclusion that a teacher's nonrenewal was arbitrary and capricious since that nonrenewal was based on complaints of which she was not apprised before the hearing at which she was terminated. As the court understands this case, it stands for the proposition that noncompliance with ATFDA is some evidence that a dismissal was arbitrary and capricious but does not necessarily compel that conclusion. It is merely one among many circumstances to which a fact-finder must look in order to make a finding. This claim is therefore not ripe for summary judgment and thus plaintiff's motion in this respect will be denied.

## III.

Lastly, defendants have moved for summary judgment on the ground of *res judicata.* Following the termination of his contract, plaintiff instituted an appeal to the appropriate circuit court. He later dismissed that appeal, without prejudice, and brought the instant action. Defendants' contention that the bar of *res judicata* is available to them in these circumstances is without merit for the simple reason that there is no judgment: *Res judicata* means "the thing has been judged," and no thing has been judged here. There is therefore no judgment in which the claim can be merged. The case of *Gahr v. Trammel,* 796 F.2d 1063 (8th Cir.1986), does not avail the defendant since there a judgment had been rendered in a case in which a claim could have been raised but was not. There is no similarity between the circumstances found in that case and the ones present here. Defendants' motion for summary judgment will therefore be denied.