887 F.2d 1086
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Walter C. ETHRIDGE, Plaintiff-Appellant,
v.
CITY OF BRENTWOOD, TENNESSEE; T. Mack Blackburn; Phillip
Hardeman; Harold J. McMurtry; Briand J. Sweeney;
Richard L. Vaughn; Howard Buttrey;
Frank W. Clifton, Defendants-Appellees.
 No. 88-6438.
 United States Court of Appeals, Sixth Circuit.
 Oct. 17, 1989.
 
 Before DAVID A. NELSON and RYAN, Circuit Judges, and RONALD E. MEREDITH, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Walter C. Ethridge brought this action under 42 U.S.C. Sec. 1983 against the City of Brentwood and others to challenge the constitutionality of his suspension and termination from employment as a Brentwood police officer following his refusal to take a polygraph examination. The district court entered summary judgment for the defendants, holding that Mr. Ethridge's right to refuse to take the examination, claimed under a Tennessee statute, was not clearly established, and therefore the individual defendants were entitled to qualified immunity. The district court also found that Ethridge's suspension was not tantamount to termination, so as to require pre-deprivation notice and hearing, and that the city could not be held liable for the actions of the individual defendants. We shall affirm the district court's judgment.
 
 
 2
 * On October 15, 1986, a local newspaper published a report that several on-duty and off-duty Brentwood police officers became drunk and disorderly at a birthday party for a fellow officer. City Manager Frank Clifton, one of the defendants herein, then called a meeting at which he appointed Captain Richard Holt to investigate the alleged misconduct and determine how the information had leaked to the press. Clifton stated that if the matter was not "straightened out" by October 23, he would set up polygraph examinations for the entire department. Clifton also stated: "And, some of you feel that I'm violating your civil rights; go get yourself a damn attorney." Ethridge did so.
 
 
 3
 On October 29 Holt directed Ethridge to take a polygraph examination. Stating he was acting on the advice of counsel, Ethridge refused. After Ethridge disobeyed two direct orders from defendant Police Chief Howard Buttrey to take the exam, Buttrey suspended him. Ethridge immediately appealed the decision. The next day Buttrey notified Ethridge that his appeal did not conform with the grievance procedure, and advised him of the necessary steps to take an appeal and get a hearing.
 
 
 4
 Having heard nothing from Ethridge by November 17, Clifton wrote to Ethridge advising him that: (1) under departmental rules, no officer could be suspended for more than thirty days in one year; (2) Ethridge would have thirty days on November 24 (because of a five-day suspension earlier in the year); and (3) his employment would be terminated on that date unless he responded to Clifton.
 
 
 5
 Ethridge then sent a statement of appeal to Clifton, who set up a hearing for December 12. Clifton extended the allowable length of suspension under departmental rules to allow for the hearing and decision.
 
 
 6
 The hearing was held before Clifton on December 12, as scheduled. At the hearing, Ethridge cited Tenn.Code Ann. Sec. 62-27-125 (effective July 1, 1986) in support of the proposition that he had a right to decline a polygraph examination.
 
 
 7
 Clifton upheld Ethridge's suspension. Noting that the intent of Sec. 62-27-125 was unclear, Clifton informed Ethridge that he would not be disciplined for the refusal to take the examination. Clifton found that Ethridge had violated other departmental rules, however: (1) Police Department Rule 7, by failing to conduct himself "in a manner not prejudicial to the reputation or good name of the Police Department;" (2) Rule 65, by failing to cooperate with a department investigation; (3) Rule 35, by undertaking a self-assigned investigation without authorization; and (4) Tenn.Code. Ann. Sec. 8-18-113, by acting as a police officer without taking an oath of office. Clifton demoted Ethridge without loss of pay, placed him on one-year probation, and ended the earlier suspension without back pay.
 
 
 8
 Ethridge had no further right of appeal (outside of filing a court action), absent a termination of employment. Ethridge refused to return to work, so on January 2, 1987, Clifton fired him. Ethridge appealed to the city commission. The commissioners unanimously upheld the termination.
 
 
 9
 Ethridge then brought this action against the City of Brentwood, Howard Buttrey, Frank Clifton, and members of the city commission. Ethridge claimed that the defendants violated his Fourteenth Amendment rights by suspending him without a prior hearing and by ordering him to undergo a polygraph examination without complying with state law. He also claimed that the defendants violated his clearly established rights under state law by disciplining him for refusing to undergo the polygraph examination.
 
 
 10
 Both sides moved for summary judgment. Without opposition from Ethridge, the court granted summary judgment for the city commissioner defendants. The court also granted summary judgment for the city on Ethridge's claim that the procedure by which his employment was terminated failed to meet constitutional standards. Two claims were referred to a magistrate: the claim against all remaining defendants for the suspension, and the claim against City Manager Clifton for the termination.
 
 
 11
 The motions were referred to a magistrate, who found that: (1) the city was not liable for the suspension; (2) Ethridge did not have a due process right to a pre-suspension hearing; and (3) Ethridge was afforded his due process rights both before and after termination. The magistrate also concluded however, that Tennessee law created a liberty interest protectable under the Due Process Clause for public employees ordered to submit to polygraph testing. Although this right was not clearly established for purposes of qualified immunity, the magistrate concluded that Ethridge had a right to declaratory relief and back pay. The district court rejected this last finding, but otherwise accepted the magistrate's recommendations and granted the defendants' motion for summary judgment. Ethridge has appealed.
 
 II
 
 12
 We first consider the case against the city. Under Sec. 1983, a municipality is a "person" that can be sued directly. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690-91 (1978). However, a municipality may not be held liable for the actions of individual employees unless the action was pursuant to an "official municipal policy of some nature;" there is no doctrine of respondeat superior under Sec. 1983. Id. at 691. Absent a pre-existing policy, the officials in question must have the "final authority" to make policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).
 
 
 13
 The question, then, is two fold: Did Clifton or Buttrey possess final authority to establish a city policy of suspending employees who refuse to take polygraph examinations, and if so, did either establish such a policy?
 
 
 14
 Buttrey lacked final authority to establish a policy, because his personnel decisions were appealable to Clifton. Clifton arguably had such authority. Although he was never delegated power to make policy regarding use of polygraphs in employment decisions, he was the final authority on all personnel matters short of dismissal. Even if Clifton was authorized to make such a policy, however, the record indicates he did not do so. Although a single decision by an authorized policy-maker may represent official government policy, Pembaur, 475 U.S. at 481, Clifton specifically stated in his hearing report that he was not upholding the suspension for Ethridge's refusal to submit to the polygraph test. Clifton enunciated other grounds that would justify the disciplinary action. There is no substantial evidence that these justifications were pretextual, and the city cannot be held liable for Clifton's actions.
 
 III
 
 15
 We turn next to the question whether the individual defendants denied Ethridge his due process rights by suspending him without a prior hearing. Ordinarily, the Due Process Clause does not require a hearing before suspension. However, where a suspension is with intent to dismiss, it is tantamount to dismissal and requires notice and a hearing. Gniotek v. City of Philadelphia, 808 F.2d 241 (3d Cir.1986), cert. denied, 481 U.S. 1050 (1987). To rise to the level of a termination, the suspension must be imposed with a clear intent to dismiss. In Gniotek, the intent was obvious; the plaintiff-employees were given a "Notice of Suspension With Intent to Dismiss." Id. at 242. In the case upon which Gniotek relied, Thurston v. Dekle, 531 F.2d 1264 (5th Cir.1976), vacated on other grounds, 438 U.S. 901 (1978), regulations provided that the employment of the suspended employee would be terminated automatically after 30 days unless a successful appeal overturned the suspension.
 
 
 16
 Ethridge has presented no evidence that his suspension was imposed with an intent to dismiss. On the contrary, Ethridge was discharged only after he refused to return to work. Ethridge contends that his suspension was tantamount to dismissal because he had no further appeal, and acceptance of the decision would constitute an admission of guilt endangering future employment. Appeals have to be cut off at some point, however, and under Ethridge's theory, any suspension would require notice and a hearing. We find no logical or precedential support for such a rule.
 
 IV
 
 17
 Finally, we turn to the question whether Ethridge was denied his rights under Tennessee state law. If Ethridge's right to refuse to take a polygraph examination was not "clearly established," the individual defendants had qualified immunity from liability for damages. Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The relevant test is whether the "official could be expected to know that certain conduct would violate statutory or constitutional rights." Id. at 819. Ethridge claims the right was clearly established by Tenn.Code Ann. Sec. 62-27-125: "... (1) Each prospective examinee shall be required to sign a notification.... (B) That he has the right to refuse to take a polygraph examination."
 
 
 18
 We find that under this statute Buttrey and Clifton could not reasonably be expected to know that the conduct in question was impermissible. The section on which Ethridge relies is directed at polygraph examiners, and it is by no means clear that the section was meant to apply to employers as well. The sections that deal specifically with employers do not provide a right to refuse the examination. See Tenn.Code Ann. 62-27-123(d) and 128. Further, the statute does not explicitly ban the use of polygraph examinations in personnel matters, as other statutes have done. See N.J.Stat.Ann. Sec. 2C; 40A-1; 18 Pa.Stat.Ann. Sec. 7321(a); W.Va.Code Sec. 21-5-5b. Far from finding the right clearly established, a Tennessee appellate court has held that an employee may be discharged for refusal to take a polygraph examination. Tinsdale v. Kayo Oil Co., No. 88-244-II, slip op. (Tenn.App. Jan. 25, 1989). Clifton and Buttrey are entitled to immunity.
 
 
 19
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Ronald E. Meredith, U.S. District Judge for the Western District of Kentucky, sitting by designation