**Mary Jo PELERIN, Respondent,**

v.

**CARLTON COUNTY, et al., Petitioners (C1–92–1633),**

**Appellants (C3–92–1634).**

**Nos. C1–92–1633, C3–92–1634.**

Court of Appeals of Minnesota.

March 23, 1993.

Review Denied May 18, 1993.

Kathryn M. Engdahl, Gordon, Miller, O'Brien, Minneapolis, for respondent.

Joseph B. Marshall, Marshall and Associates, P.A., Circle Pines, for petitioners.

Considered and decided by CRIPPEN, P.J., and DAVIES and AMUNDSON, JJ.

## OPINION

DAVIES, Judge.

Appellants Sheriff Terry Twomey and Carlton County seek immunity from a claim that Twomey denied Deputy Mary Jo Pelerin the right to due process when discharging her. The trial court denied appellants' summary judgment motion asking for immunity. We reverse and remand.

## FACTS

On July 16, 1989, two inmates at the Carlton County jail assaulted guard Bill Huima during evening lock-down. The inmates gained possession of Huima's keys and severely wounded him with a home-made wooden knife. After the incident, Huima and his shift partner, guard Mary Jo Pelerin, were placed on routine administrative leave pending investigation of the incident.

After the investigation, Carlton County Sheriff Terry Twomey decided to fire Pelerin. Pelerin was called to a meeting attended by an undersheriff, the county personnel director, and Twomey. At the beginning of the meeting, Pelerin was given a letter telling her she was fired. The letter gave reasons for her discharge. Pelerin was given time to read the letter and was asked if she had any questions. The personnel director then told her she had the right to take up the matter through union grievance procedures. Pelerin's only response was, "Don't worry about the letter, I'll take care of it."

Pelerin then filed a union grievance, which went to arbitration. The arbitrators determined that Pelerin had been denied due process in the termination proceeding and had been fired without cause. As a result of the arbitration, Pelerin was reinstated with back pay.

Pelerin also filed this action against Twomey and Carlton County alleging: (1) discrimination on the basis of race contrary to Minn.Stat. § 363.03, subd. 2; (2) retaliatory discharge contrary to Minn.Stat. § 363.03, subd. 7; (3) defamation and slander per se; and (4) violation of 42 U.S.C. § 1983 based on a denial of due process in termination of public employment. Pelerin is part Chippewa Indian and had previously filed complaints with the Minnesota Human Rights Department based on perceived racial discrimination at the jail.

Pelerin has consistently denied the allegations that led to her discharge. The two inmates involved in the attack later reversed their stories and indicated that Twomey intimidated them into implicating Pelerin in the attack.

Twomey and the county moved for summary judgment on all claims, with Twomey claiming qualified immunity and the county claiming governmental immunity. Pelerin moved for summary judgment on the section 1983 claim and asked the district court to deny the immunity defenses. On August 3, 1992, the court determined that material issues of fact precluded summary judgment on the immunity issue, but it ruled that the arbitration decision holding that Pelerin had been denied due process was res judicata.

Twomey and the county appeal the denial of immunity and seek discretionary review of the res judicata, defamation, discrimination, and retaliatory discharge issues.

## ISSUE

Did the district court err in denying Sheriff Twomey and Carlton County immunity?

## ANALYSIS

■ Government officials performing discretionary functions are immune from civil damages for violations of constitutional rights if their conduct did not "violate clearly established statutory or constitu-

tional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This standard focuses on the "objective legal reasonableness of an official's acts." *Id.* at 819, 102 S.Ct. at 2739. It "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 1096–97, 89 L.Ed.2d 271 (1986).

■ To avoid dismissal on grounds of qualified immunity, a plaintiff alleging violation of a constitutional right by a public official must allege that the violated right was "clearly established" in a particularized sense. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Id.*

■ Qualified immunity is an immunity from suit, not simply a defense to liability, and is intended to end unjustified lawsuits quickly. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984). The Supreme Court has recently reaffirmed that qualified immunity is a legal question that should be decided by the court "long before trial." *Hunter v. Bryant*, — U.S. —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991).

■ Well-established law declares that a public employee with a constitutionally protected property interest in that employment is entitled to a pretermination hearing consisting of notice and an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). A full evidentiary hearing is not necessary if a more complete hearing is available to the employee after the termination. *Id.* at 545, 105 S.Ct. at 1495. Rather, the pretermination hearing "should be an initial check against mistaken decisions." *Id.* Notice providing an opportunity to respond may be either written or oral. *Id.* at 546, 105 S.Ct. at 1495.

■ Numerous cases have attempted to further define the "particularities" of the right to a pretermination hearing. For example, informal meetings with supervisors, in which unacceptable performance is discussed, satisfy due process requirements. *Riggins v. Board of Regents of Univ. of Neb.*, 790 F.2d 707, 711 (8th Cir.1986).

■ In addition, due process does not require a predecision hearing, but rather "an opportunity to be heard prior to the termination of benefits." *Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1391 (8th Cir.1988).

In *Gniotek v. City of Philadelphia*, 808 F.2d 241, 244 (3rd Cir.1986), the Third Circuit stated that notice is sufficient if it apprises the employee of the nature of the charges and general evidence and is timely under the particular circumstances of the case. In *Gniotek*, police officers named as recipients of bribes were called in to their supervisor's office and told of the charges against them. After the officers, on advice of counsel, refused the opportunity to make a statement, they were given suspension notices, "*de facto* dismissals." *Id.* at 242–43. The court held that the officers had been afforded due process, stating, "Lack of advance notice [of the charges and evidence against the employees] * * * does not constitute a *per se* violation of due process." The court also determined that notice served at the pretermination hearing was sufficient. *Id.* at 244 (relying on *Goss v. Lopez*, 419 U.S. 565, 582, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975)).

In *Conlin v. City of St. Paul*, 418 N.W.2d 741, 744–45 (Minn.App.1988), *pet. for rev. denied* (Minn. Mar. 30, 1988), this court held that an employee was afforded due process when his employer sent a letter informing him that he would be terminated in a week and that he could meet with his supervisor to discuss the matter during that week. The court recommended:

In the future, we suggest that when a pretermination notice is required, the notice should discuss proposed action * * * as prospective only, and not imply that the charges have been reviewed and found proven, that a firm conclusion has been reached. * * * We suggest the notice include a fixed date on which the employee, at his own discretion, could meet with his supervisor on the matter.

*Id.* at 745.

[8] Although Twomey gave Pelerin minimal notice of the reasons for his termination decision and minimal opportunity to respond, his actions were not contrary to *clearly* established law. *Conlin* and other cases merely suggest that an employee should be given more notice than Pelerin received. *Conlin* 418 N.W.2d at 745; *see also Peery v. Brakke*, 826 F.2d 740, 743 (8th Cir.1987) (notice was insufficient where employee was unaware of complaints cited as supporting termination). In contrast, however, *Gniotek* condoned notice first given during an informal meeting with supervisors. The law in this area was thus not "clearly established" when Pelerin was fired.

██ More significantly, there is no dispute that Pelerin was asked a number of times during the meeting whether she had any questions or comments. She was thus afforded some opportunity to respond, but apparently chose not to. Rather, Pelerin chose to rely on a grievance procedure provided by a collective bargaining agreement. Pelerin was aware of that procedure and had used it in the past. Her only response during the meeting with Twomey, "Don't worry about the letter, I'll take care of it," suggests her immediate intention was to pursue that remedy, rather than to express her objections at that time.

██ We hold that Twomey is entitled to qualified immunity. We need not, therefore, address the related issues raised by the parties. Because the county's liability depends on wrongdoing on the part of Twomey, it is also immune. We deny the petition for discretionary review.

## DECISION

Sheriff Twomey is entitled to qualified immunity and the county is, thus, also shielded from liability.

**Reversed and remanded.**